# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **SHANE HENDERSON, et al.,** | } |
| **Plaintiffs,** | } |
| v. | } Case No.: 7:21-CV-1578-RDP |
| **COMMERCIAL DISPATCH PUBLISHING CORPORATION, INC.,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. # 2). The matter has been fully briefed (Docs. # 2, 7, and 12) and is ripe for review. The Motion (Doc. # 2) borders on frivolous and is due to be denied.

"A federal district court in [Alabama] may exercise personal jurisdiction over a nonresident defendant to the same extent that [an Alabama] court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008); *see also* Ala. R. Civ. P. 4.2. The Supreme Court has recognized two types of personal jurisdiction that are consistent with these legal requirements—general jurisdiction and specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). Only the latter, specific jurisdiction, is at issue here. A court has specific jurisdiction over a defendant with respect to claims that arise out of or relate to the defendant's contacts with the forum. *Id.* at 923-24. As explained below, and after careful review, the court concludes it has such specific jurisdiction over Defendant in this case.

Plaintiffs -- who are based in Tuscaloosa, Alabama -- allege that an article published by Defendant Commercial Dispatch defamed them. Defendant's offices are in Mississippi, eleven miles from the Alabama state line. (Doc. # 2 at 3). Until this litigation started, its Instagram and

Facebook bios described it as a "newspaper and website covering," among other areas, "portions of western Alabama." (Doc. # 1-1 ¶¶ 12-13; *see also* Doc. # 2-1 ¶ 10). Currently, 143 Alabama residents subscribe to Defendant (Doc. # 2-1 ¶ 13), and single copy circulation in Alabama is approximately 150 per week (*id.* ¶ 12). Electronic records indicate that the digital version of the allegedly defamatory article has been viewed 295 times in Alabama. (*Id.* ¶ 19).

The article at issue in this case reads as follows:

## Employer of two workers who died at job site linked to 27 previous OSHA violations

### Gilco Contracting's OSHA violations, 2005-2008

The now-defunct Tuscaloosa construction company Gilco Contracting accumulated a variety of federal citations for safety violations at work sites. 22 of the 27 listed below received OSHA's highest assessment of potential danger. Gilco's former president, Shane Henderson, now runs Southern Civil Contracting in Tuscaloosa. Two Southern Civil employees died in a construction accident on May 19, under conditions similar to those in a 2006 accident that left a worker without an arm and accrued five OSHA citations, including two for repeated violations. Southern Civil has three previous citations to its name.

| Classification | Specific excavation requirements | Protective system requirements | Safety training and education | Equipment (rigging, ladders, radiation) | General (no specific standard applies) | Unknown | Total |
|---|---|---|---|---|---|---|---|
| Serious | 4 | 2 | 1 | 4 | 1 | | 12 |
| Willful | 2 | | 1 | | | | 3 |
| Repeat | 4 | 5 | | | | | 9 |
| Other | | | | | | 3 | 3 |
| Total | 10 | 7 | 2 | 4 | 1 | 3 | 27 |

Source: Inspection reports from the U.S. Department of Labor's Occupational Safety and Health Administration
Tess Vrbin/Dispatch Staff

Tess Vrbin
May 24, 2020 9:46:33 AM

Trench collapses at construction sites are rare, Starkville Fire Chief Charles Yarbrough told reporters after a collapse killed two workers at a housing development on Tuesday.

But safety risks tied to the head of Southern Civil Contracting, the construction company working at the multi-home development where the accident occurred, are much less rare. A long list of citations for safety violations from the U.S. Department of Labor's Occupational Safety and Health Administration are linked to Shane Henderson, president and owner of the Tuscaloosa-based company.

Henderson was previously president of Gilco Contracting, also based in Tuscaloosa. Gilco accrued 27 OSHA citations from inspections of trenches at construction sites between 2005 and 2008, according to inspection records OSHA sent The Dispatch on Friday. Southern Civil had three similar citations in 2010, its first year of existence. In the past 10 years, however, OSHA has not cited the company.

> Zachary Wayne Osbourn, 36, and William Kizzire, 19, both of Fayette County, Alabama, were killed Tuesday when a trench collapsed on them while they were laying pipe at the construction site on South Montgomery Street, just south of the Maison de Ville subdivision. Andy Fornea, owner of A.S. Fornea Construction out of Oxford, is the site's developer.
>
> First responders arrived to find Osbourn dead, and they spent two and a half hours rescuing Kizzire from the rubble.
>
> Kizzire died en route to the North Mississippi Medical Center in Tupelo via helicopter.
>
> A similar accident in the Tuscaloosa area in April 2006 pinned a Gilco employee underneath some equipment in an 18-foot trench after a soil collapse, and the employee's crushed arm was later amputated, according to the Birmingham Business Journal. Gilco received five OSHA citations for the accident: three for failing to meet specific excavation requirements, one for a safety training and education violation and one for failing to meet protective system requirements.
>
> The safety training citation was later dropped, and two of the other violations were reclassified from "willful" to "repeat." Willful violations are "where an employer has demonstrated either an intentional disregard for the requirements of the act or a plain indifference to employee safety and health," according to OSHA's Field Operations Manual.
>
> Employers are cited for repeated violations if they have been cited in the past for "the same or a substantially similar condition or hazard." Gilco went out of business in 2013, but OSHA still considers an employer's past when issuing citations.
>
> Gilco had more violations labeled serious than any other type, and the manual defines serious as "a substantial probability that death or serious physical harm could result." Gilco had 12 serious and nine repeated violations.
>
> Tuesday's accident is still under investigation, so OSHA declined to comment on it. Henderson could not be reached for comment after multiple calls and voice messages from The Dispatch to the Southern Civil office.
>
> **'The most serious violative conditions'**
>
> Failure to meet specific excavation requirements and protective system requirements made up the vast majority of Gilco's violations, 17 out of 27.
>
> The violations did not specifically state which requirements were not met, but specific excavation requirements include the prohibition of "exposure to falling loads," and protective systems during excavations must be able to withstand "all loads that are intended or could reasonably be expected to be applied or transmitted to the system," according to OSHA regulations.
>
> All 17 violations were assigned a gravity of 10, the highest designation from OSHA based on both the severity and probability of potential illness or injury if an accident were to occur, according to the Field Operations Manual. Factors that determine probability include the number of employees exposed to hazardous conditions, the "frequency and duration of exposure," the employees' ages and proximity to the danger.
>
> OSHA only assigns a designation of 10 to "the most serious violative conditions, such as those situations involving danger of death or extremely serious injury or illness," according to the manual. Five more of Gilco's citations were designated 10, including two rigging equipment violations and one "general duty" violation, meaning there was no specific standard that applied to the hazard.
>
> Gilco was initially fined a total of $530,500 for the 27 citations, but OSHA reduced the fines to a total of $258,735, less than half, after the company contested the citations.
>
> Southern Civil had two serious citations for specific excavation requirements and one for protective system requirements in 2010. One of the excavation requirements violations had a gravity designation of 5, or moderate severity and probability of an accident, but the other two violations were designated 10.
>
> Southern Civil's fine was reduced from $1,050 to $788 after contesting the citations.
>
> The inspection reports for both companies indicate they corrected the violations within the period assigned by OSHA, which imposes additional fines if the correction deadline is not met.

(Doc. # 1-1 at 32-33).

But, Plaintiff Henderson claims he was not the president of Gilco Contracting when it was issued OSHA citations. (Doc. # 7-1 ¶ 13). Thus, it is alleged, Defendant defamed Plaintiff Henderson and Plaintiff Southern Civil Contracting, Inc. by linking them to violations for which they were not responsible. (*See* Doc. 1-1 ¶¶ 41-47).

Defendant's arguments are clearly foreclosed by the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). There, the Court held that the California court properly had specific jurisdiction over non-resident defendants who published an allegedly libelous article about the resident plaintiff. *Id.* at 788-90. The Supreme Court summarized *Calder* in one of its later decisions:

> The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. *See* Restatement (Second) of Torts § 577, Comment b (1976); *see also ibid.* ("[R]eputation is the estimation in which one's character is held by his neighbors or associates"). Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element of libel, *see id.*, § 558, the defendants' intentional tort actually occurred in California. *Keeton* [*v. Hustler Magazine*], 465 U.S. [770,] 777 [1984] ("the tort of libel is generally held to occur wherever the offending material is circulated"). In this way, the "effects" caused by the defendants' article -- *i.e.*, the injury to the plaintiff's reputation in the estimation of the California public -- connected the defendants' conduct to California, not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

*Walden v. Fiore*, 571 U.S. 277, 287-88 (2014). Here, Defendant explicitly targeted Alabama readers and published an article about an Alabama company, its Alabama leadership, and events that had occurred in Alabama. In addition, the article's author had contacts with Alabama in preparing the story. (*See* Doc. # 1-1 at 33 ("Henderson could not be reached for comment after

multiple calls and voice messages from The Dispatch to the Southern Civil office [in Alabama].")). After its publication, the article was read by the people in Alabama, and Plaintiffs now allege they felt the article's effects -- damaged reputations -- in Alabama. Finally, it would "not offend traditional notions of fair play and substantial justice" to exercise jurisdiction over Defendant. *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*, 480 U.S. 102, 105 (1987) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Defendant's offices are located only 59.1 miles from this courthouse (Doc. # 7-2 ¶ 19), and Alabama has an interest in safeguarding the reputation of its citizens and companies. This case is not a close call.

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

**DONE** and **ORDERED** this January 21, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

5